## Conley v. Commonwealth.
(Decided June 23, 1936.)

JOE TACKETT and STEELE & VANOVER for appellant.

B. M. VINCENT, Attorney General, and OWEN KELLAR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Roy Conley (alias Chub Dixon) appeals from a life sentence imposed upon him for the murder of Palmer Ratliff.

This occurred on Monday, April 29, 1935, and was a cowardly, brutal assassination.

About April 1, 1935, the United Mineworkers of America began an effort to organize the employees of the Barrowman Mines in Pike county, and soon induced some thirty odd of its workmen to join that union and to strike.

Other employees continued to work, and the strikers began picketing the mines in an effort to induce the others to join them and to prevent the operation of the mine. Various strikers made speeches from time to time that tended to encourage violence; the hearers being assured that, if they were convicted, the union would pay their fines etc.

A meeting was held at or near the schoolhouse on Sunday afternoon, April 28th, and the appellant solicited parties to go with him the next morning to stop a man-trip, and told them they had rifles at Henry Swinneys. These parties declined to go, whereupon the appellant said that, if they did not go, Toy Swinney, Jesse Swinney, Henry Swinney, Mason Swinney, and David Stapleton would go with him.

The employees at this mine usually assembled near the tipple. There they would take their places in the bank cars, and to these a mine motor is attached, and the men are thus conveyed along a tramroad to their working places, and such a train conveying workmen is called a "man-trip." This tramroad leads through a mountain, then emerges and runs along its side and in the open for quite a distance, then it re-enters the mountain and leads to the places whereat these men were to work.

Such a trip was made up and started about 7 a. m. April 29th. It had passed through this first tunnel, and was proceeding along this open stretch when the motorman discovered a large stone upon the track. He stopped and was rolling the stone off the track when some one began shooting at these men with high-powered rifles from a cliff about 500 yards above

and across the gulch that adjoined the tramroad. Some 75 or 80 shots were fired, and one of these workmen, Palmer Ratliff, was so wounded that he died about twelve hours later. The names of the strikers were known, and a checkup of these then picketing the mine was made and the absentee strikers were arrested. Subsequent investigation disclosed that this was a carefully planned ambuscade. Behind rocks and other shelter on this adjoining and overhanging cliff there were found empty cartridge shells, track, etc., and the intervening brush, bushes, etc., had been cut or broken down so as to give the assassins a good view of the men on this man-trip at the point where they knew they needs must stop to remove the stone from the tram-road. The proof as to the appellant concludes with the evening before this murder. We have no evidence thereafter connecting him with this assassination or its planning in any way, and his conviction is clearly rested upon a guess that, after he had prepared for an effort to stop this man-trip, he then planned this ambuscade and had some participation in the assassination that took place the next morning, with no proof that he did plan this ambuscade or in any way participate in this assassination.

This conviction is flagrantly against the evidence; a man cannot be deprived of his liberty on guess, surmise, conjecture, or suspicion. Crabtree v. Com., 260 Ky. 575, 86 S. W. (2d) 301; Crawford v. Com., 242 Ky. 80, 45 S. W. (2d) 824; Tarkaney v. Com., 240 Ky. 790, 43 S. W. (2d) 34; Marcum v. Com., 212 Ky. 212, 278 S. W. 611; Wilkerson v. Com., 76 S. W. 359, 25 Ky. Law Rep. 780; Brown v. Com., 69 S. W. 1098, 24 Ky. Law Rep 727; Abbott v. Com., 47 S. W. 576, 20 Ky. Law Rep. 727.

### Error in the Evidence.

As this man may be tried again, we will correct an error which appears in the evidence.

Several bullets were picked up and dug out where this man-trip was stopped when it was fired on, and Richard Potter testified from a casual examination of one of them that it had been fired from a Winchester rifle which he had seen at Jesse Swinneys. The defendant's motion to exclude this was overruled, which

was erroneous. This court has been most careful in admitting ballistic evidence. In Jack v. Com., 222 Ky. 546, 1 S. W. (2d) 961, we reversed a judgment where evidence had been admitted of a far more careful examination than this one, and we do not recall having ever approved the admission of such evidence where the examination was made with less care than that outlined in Evans v. Com., 230 Ky. 411, 19 S. W. (2d) 1091, 66 A. L. R. 360.

The court should have awarded appellant a new trial.

Judgment reversed.